**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CONSOLIDATED FOOD SERVICES, INC., d/b/a Express Gourmet, Respondent.**

**No. 03–1703.**

United States Court of Appeals, Sixth Circuit.

Nov. 3, 2003.

---

14

Aileen A. Armstrong, Dep. Asso. Gen. Counsel, Linda Dreeben, Washington, DC, for Petitioner.

Consolidated Food Services, Inc., pro se, Southfield, MI, for Respondent.

Before: RYAN, MOORE, and ROGERS, Circuit Judges.

## JUDGMENT

The respondent was charged with violating federal labor law by failing to bargain with the union as to the closing of a restaurant and failing to provide the union with certain requested documents. The respondent did not file an answer to the charges. On March 14, 2003, the National Labor Relations Board (the "Board") entered a decision and order in Case No. 7–CA–44786 granting the General Counsel's motion for summary judgment. The Board ordered the respondent to bargain with the union and to provide the requested documents. It also ordered limited backpay for affected employees. The Board now applies to this court for summary enforcement of its decision and order.

In response to the Board's application, this court received a letter from Mary L. Lewis, who identifies herself as the sole shareholder of the above corporation.[1] She states that the respondent ceased business operations for financial reasons

1. The law is well-settled that a corporation may appear in federal courts only through licensed counsel and not through the *pro se* representation of an officer, agent, or shareholder. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201–03, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (noting that this "has been the law for the better part of two centuries.") There is caselaw, however, that holds that a sole proprietorship has no legal existence apart from its owner and that the individual owner may represent a sole proprietorship in a *pro se* capacity. *See United States v. Fox*, 721 F.2d 32, 36 (2d Cir.1983); *United Parcel Service v. The Net, Inc.*, 185 F.Supp.2d 274, 279–80 (E.D.N.Y.2002); *Lowery v. Hoffman*, 188 F.R.D. 651, 653–54 (M.D.Ala.1999). Although the nature of the respondent's status is not clear from the materials before us, we will, in an exercise of caution, treat the letter as a response to the Board's application.

and that all wages due at the time of closing were paid. She also states that she cannot produce the documents sought by the union, including some documents apparently lost during a theft from her office.

The fact that a respondent may have ceased business operations and may no longer be able to comply with the Board's decision and order is not a bar to enforcement of that decision and order by this court. *NLRB v. Electric Steam Radiator Corp.*, 321 F.2d 733, 738 (6th Cir.1963). Likewise, 29 U.S.C. § 160(e) prohibits this court from considering objections not made before the Board unless such failure "shall be excused because of extraordinary circumstances." This requirement is waived "only in cases of extenuating circumstances," *NLRB v. Ferraro's Bakery, Inc.*, 353 F.2d 366, 368 (6th Cir.1965), and then "only if there has been some occurrence or decision that prevented a matter which should have been presented to the Board from having been presented at the proper time." *NLRB v. Allied Products Corp.*, 548 F.2d 644, 654 (6th Cir.1977). We conclude that no reasons have been advanced which would explain the respondent's failure to file an answer to the charges against it.

It therefore is **ORDERED** and **ADJUDGED** that the Board's decision and order in Case No. 7–CA–44786 be and hereby is enforced. The respondent, Consolidated Foods Services, Inc., d/b/a Express Gourmet, its officers, agents, successors, and assigns, shall abide by the directives contained therein. (See Attachments)

### ORDER

The National Labor Relations Board orders that the Respondent, Consolidated Food Services, Inc. d/b/a Express Gourmet, Southfield, Michigan, its officers, agents, successors, and assigns, shall

Cease and desist from

(a) Failing and refusing to bargain in good faith with Local 24, Hotel and Restaurant Employees International Union, AFL–CIO, as the exclusive representative of the employees in the bargaining unit set forth below, by refusing to bargain with the Union concerning the effects on the unit employees of the Respondent's decision to close its Detroit Metropolitan Airport facility, and the termination of the unit employees.

All cooks, bakers, storeroom employees, utility employees, hosts/hostesses, cashiers, deli/grill attendants, bartenders, pie bakers/baker helpers, pantry employees, snack bar employees, fast food attendants and servers employed by Respondent at Detroit Metropolitan Airport, but excluding confidential employees, watchmen, and guards and supervisors as defined in the Act.

(b) Failing and refusing to furnish the Union with information that is necessary for, and relevant to, its performance of its function as the exclusive representative of the employees in the unit.

(c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) On request, bargain with the Union concerning the effects on unit employees of the closing of the Respondent's facility at the Detroit Metropolitan Airport, and the resulting termination of the unit employees.

(b) Pay the former employees in the unit described above their normal wages when in the Respondent's employ from 5

days after the date of this Decision until the occurrence of the earliest of the following conditions: (1) the date the Respondent bargains to agreement with the Union on those subjects pertaining to the effects of the closing of its Detroit Metropolitan Airport facility, and its termination of the unit employees; (2) the date a bona fide impasse in bargaining occurs; (3) the failure of the Union to request bargaining within 5 business days after receipt of this decision, or to commence negotiations within 5 business days after receipt of the Respondent's notice of its desire to bargain with the Union;[1] or (4) the subsequent failure of the Union to bargain in good faith; but in no event shall the sum paid to any of the employees exceed the amount he or she would have earned as wages from the date in October 2001, when the Respondent closed its facility, to the time he or she secured equivalent employment elsewhere, or the date on which the Respondent shall have offered to bargain in good faith, whichever occurs sooner; provided, however, that in no event shall this sum be less than these employees would have earned for a 2–week period at the rate of their normal wages when last in the Respondent's employ, with interest, as set forth in the remedy section of this decision.

(c) Furnish the Union with the following information requested in its letter of November 28, 2001: an accounting of all unpaid contractual obligations, including wages, fringe benefits, and accrued vacation pay.

(d) Preserve and, within 14 days of a request, or such additional time as the Regional Director may allow for good cause shown, provide at a reasonable place designated by the Board or its agents, all payroll records, social security payment records, timecards, personnel records and reports, and all other records including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this Order.

(e) Within 14 days after service by the Region, duplicate and mail, at its own expense and after being signed by the Respondent's authorized representative, copies of the attached notice marked "Appendix"[2] to all former employees who were employed by the Respondent when it ceased operations at the Detroit Metropolitan Airport on about October 15, 2001.

(f) Within 21 days after service by the Region, file with the Regional Director for Region 7 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

APPENDIX

NOTICE TO EMPLOYEES

MAILED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

---

1. *Melody Toyota,* 325 NLRB 846, 1998 WL 289059 (1998).

2. If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Mailed by Order of the National Labor Relations Board" shall read "Mailed Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of The National Labor Relations Board."

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT fail and refuse to bargain in good faith with Local 24, Hotel and Restaurant Employees International Union, AFL–CIO, as the exclusive representative of the employees in the bargaining unit set forth below, by refusing to bargain with the Union concerning the effects on the unit employees of our decision to close our Detroit Metropolitan Airport facility, and the resulting termination of the unit employees.

All cooks, bakers, storeroom employees, utility employees, hosts/hostesses, cashiers, deli/grill attendants, bartenders, pie bakers/baker helpers, pantry employees, snack bar employees, fast food attendants and servers employed by us at Detroit Metropolitan Airport, but excluding confidential employees, watchmen, and guards and supervisors as defined in the Act.

WE WILL NOT fail and refuse to furnish the Union with information that is necessary for, and relevant to, the Union's performance of its function as the exclusive representative of the employees in the unit.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

WE WILL, on request, bargain with the Union concerning the effects on unit employees of the closing of our facility at the Detroit Metropolitan Airport, and the resulting termination of the unit employees.

WE WILL pay limited backpay to the unit employees in connection with our failure to bargain with the Union concerning the effects of our closing of the Detroit Metropolitan Airport facility.

WE WILL furnish the Union with the following information requested in its letter of November 28, 2001: an accounting of all unpaid contractual obligations, including wages, fringe benefits, and accrued vacation pay.

CONSOLIDATED FOOD SERVICES, INC. D/B/A EXPRESS GOURMET