NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0237n.06
Filed: March 31, 2009

No. 07-1519

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DIGITAL FILING SYSTEMS, L.L.C. | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ADITYA INTERNATIONAL AND | ) | MICHIGAN |
| AKHILESH AGARWAL, | ) | |
| | ) | OPINION |
| Defendants-Appellants. | ) | |

**Before:** **BATCHELDER and MOORE, Circuit Judges; and BUNNING, District Judge.**[*]

**DAVID L. BUNNING, District Judge.** This case is before this Court for the third time. In the first appeal, Case No. 05-1796, we upheld the district court's entry of a Default Judgment against Defendants-Appellants on Plaintiff-Appellee's Complaint for copyright infringement. In the second appeal, Case No. 05-2101, we upheld in part the district court's award of statutory damages, injunctive relief, and attorneys' fees, and reversed the district court's award of statutory damages and injunctive relief with respect to the computer software known as "DigiCourt" and remanded for further proceedings. In this third appeal, Defendants-Appellants challenge, *inter alia,* the district court's post-remand

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

-1-

ruling affirming its prior award of relief. For the reasons stated herein, we affirm the district court's decision to affirm its prior award of statutory and injunctive relief, though we conclude that remand is in order for the purpose of modifying the scope of the injunctive relief.

## I. BACKGROUND/PROCEDURAL HISTORY

Plaintiff-Appellee Digital Filing Systems, Incorporated (hereafter Plaintiff or Digital Filing Systems), is a corporate citizen of Michigan; Harish L. Verma is its President. On January 31, 2003, Digital Filing Systems sued Defendants-Appellants Akhilesh Agarwal, a citizen of New Delhi, India, and the sole proprietorship he operates, Aditya International (hereafter Defendants or Aditya International) in the Eastern District of Michigan. Appellants proceeded pro se before the trial court and before this Court.[1]

Digital Filing Systems owns a trademarked computer software product "ProFile," registered under U.S. Copyright Reg. No. TX-5-551-436. In 1999 it contracted with Defendants to enhance, add, modify, and debug its ProFile product. That Agreement provided that Plaintiff maintained all rights to ProFile, including any work done by Defendants, to which Defendants gave up any and all rights. It further provided that Defendants would not market, sell, or distribute in the United States any document management software using any aspect of imaging technology. Digital Filing Systems alleges Defendants have marketed and sold software called "DigiFile," registered under U.S. copyright Reg. No. TX 5-389-304, that is either derived from, or incorporates, ProFile.

---

[1]As we have previously noted, this pro se status is acceptable, given that Agarwal is the sole proprietor of the unincorporated business Aditya International. *See N.L.R.B. v. Consol. Food Servs., Inc.*, 81 F. App'x 13, 14 n.1 (6th Cir. 2003) (unpublished decision).

-2-

Upon discovery of DigiFile's existence, Plaintiff sued Defendants in federal district court for breach of the Agreement; for unlawful conversion of Plaintiff's property for which it sought to strike Defendants' registration; and for actual and statutory damages, and injunctive relief under the Copyright Act, 17 U.S.C. § 101, *et seq.*

Defendants' Answer asserts that they have thus far developed three software programs popular in the United States: DigiFile (document scan/image software), DigiCourt and DigiRecord (both used as case management software). Defendants contend they own a U.S. Copyright Registration No. TX5-389-304 issued May 18, 2001, on their product DigiFile, formerly known as ProFile. Defendants maintain that it was Plaintiff who approached them in 1997 about testing and evaluating ProFile; and that Defendants continued to make changes and improvements to ProFile over the next few years then entered into a Value Added Reseller (VAR) Agreement after Plaintiff requested a nonexclusive contract to market and sell the product. Aditya International contends Plaintiff unlawfully applied for and was issued a U.S. copyright registration for ProFile on February 26, 2002, when in fact ProFile originated with Defendants and was now registered by them under the name DigiFile.

Digital Filing Systems filed a detailed responsive pleading in the New Delhi action, maintaining Defendants perpetrated a fraud on the New Delhi court by their filing of false information and a forged VAR Agreement. According to Digital Filing Systems, it encountered Agarwal while he was working as a programmer for a company Plaintiff contracted with in 1999 to render programming refinement services on ProFile. Plaintiff subsequently started working directly with Agarwal in 1999 for programming and development services; with all property rights retained by Plaintiff. Digital Filing Systems

maintains that upon return of its ProFile software, Defendants retained a copy without permission and labeled it DigiFile, and also planted a bug in the source code before returning ProFile, so as to receive copies of Plaintiff's client communications and information.

At Defendants' request, the district judge initially stayed the Michigan federal court action in May of 2003, while a copyright infringement lawsuit filed by Defendants in New Delhi proceeded. The stay was lifted after Plaintiff represented the Indian case had been dismissed. In February of 2005 Defendants moved to clarify Plaintiff's intention to proceed in Michigan federal court, claiming that the Indian case was not dismissed as Plaintiff had erroneously reported, and that the Indian court's ruling on Defendants' contempt petition restrained Plaintiff from proceeding further with the Michigan district court action.

After a series of events that the district court viewed as willful hindrance of the proceedings in her court, on April 22, 2005, the district judge entered a Default Judgment against Defendants on the underlying infringement claims alleged in Plaintiff's Complaint. The district court concluded Defendants had actively avoided prosecution by refusing to comply with discovery and a court order compelling them to do so, and had avoided service of documents and communications from opposing counsel and the court, culminating in Defendants' failure to participate in a court-scheduled conference call despite being expressly informed by chambers that the call would occur as scheduled. Default Judgment was therefore entered for Defendants' active and unreasonable delay in the proceedings.

Defendants timely appealed that ruling. Concluding the district court had not abused its discretion by entering a default judgment under the circumstances described above, this Court on April 28, 2006, affirmed entry of that default judgment, based upon

its consideration of the factors identified in *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1073 (6th Cir. 1990). This Court reviewed in detail the difficulties in prosecuting the case, the efforts of counsel and the lower court to procure Defendants' participation so that the litigation could be advanced, and Defendants' lack of participation and inadequate explanations for that lack of participation. Defendants were given opportunities by the district court to cure and explain their acts and omissions, and were warned that continued failure to prosecute could result in severe sanctions. The district court found that Defendants' actions prejudiced Plaintiff, an American business, in its ability to reasonably advance its litigation for copyright infringement at a time when, if the allegations proved true, the infringement was continuing to occur.

While that appeal was pending, Plaintiff proceeded to move the district court for an award of fees, injunctive relief, and damages on its infringement claim. By Opinion and Order of July 20, 2005, the lower court granted Plaintiff's motion and entered a judgment awarding attorneys' fees and filing costs totaling $27,870.55, as well as $67,500.00 in statutory damages under 17 U.S.C. § 504(c)(1). In awarding this sum, the district court examined the considerations pertinent to determining a damage figure within the statutorily specified range. First, it looked at whether sufficient evidence had been put forth to show that the infringement was willful, thereby allowing an increase in the maximum statutory award, or whether the infringement was innocent, in which case a decrease in the statutory minimum is permitted. It found that "[t]he evidence presented by Plaintiffs establishes that Defendants did not act *innocently,* but it does not sufficiently establish that Defendants acted *willfully.*" Therefore, pursuant to § 504(c)(1), the damages for each infringement were required to be in a sum of not less than $750.00 or more than $30,000.00, as the

court determined would be just so as to deter and discourage wrongful conduct under the Copyright Act. The district court awarded Plaintiff $67,500.00 in statutory damages, without further elaboration aside from noting that "Plaintiff has identified 90 copies of the infringing software product in 30 identified locations within the United States. The court will multiply each of the works by the statutory minimum of $750 and award Plaintiff $67,500." It appears these 90 infringements were based upon an attachment to Plaintiff's motion listing 30 purchasers who purportedly had 90 copies of software infringing on its copyrighted ProFile software.

The district court awarded injunctive relief, imposing an injunction pursuant to 17 U.S.C. § 502 "restraining Defendants from offering for sale, selling, reproducing, preparing derivative works, distributing copies of, or otherwise using the software product DIGIFILE, DIGICOURT, PROFILE . . . ." It also granted injunctive relief under § 503(b) by ordering that "all copies of any software identified as DIGIFILE, DIGICOURT, or similar software obtained from Defendants or a reseller or distributor of Defendants be impounded by Plaintiff and destroyed at Plaintiff's discretion . . . ."

Defendants also timely appealed that Judgment. In an Order dated May 15, 2006, we affirmed the lower court's award of attorneys' fees. This Court's review focused not on the fact that statutory damages had been awarded, since Plaintiff had been granted a Default Judgment and that determination had been affirmed on appeal, but rather on the scope of that statutory damage award. Noted in our Order was that injunctive relief and the number of infringements had been calculated based upon Defendants' sales of DigiCourt, a product Defendants pointed out was developed by them and protected by a separate copyright. As to this point, this Court noted that:

The proposed order [attached to Plaintiff's motion] awarded relief not only with respect to DigiFile, but also as to a previously unmentioned product known as DigiCourt. The defendants filed a response, generally denying liability and asserting that DigiCourt had been developed by the defendants and was protected by a third copyright, Copyright Reg. No. TX 5-917-734. Furthermore, the defendants alleged that the purchasers listed in the motion were purchasers of DigiCourt, not DigiFile. The plaintiff filed a reply, but did not address the defendants' argument concerning DigiCourt. Without holding a hearing, the district court granted the plaintiff's motion and awarded statutory damages in the amount of $750 for each copy of infringing software product, . . . . The district court likewise did not address the defendants' arguments concerning DigiCourt.

The district court's award of statutory damages was therefore vacated. In our Order, we emphasized that "plaintiff clearly is entitled to statutory damages for each sale of a software product impermissibly derived from ProFile," but remanded the matter for additional findings of fact by the district court with respect to its award of statutory damages.

Our May 15, 2006, Order also noted the same problem with the scope of injunctive relief awarded to Plaintiff. The Judgment included DigiCourt as an offending product that Defendants were restrained from selling, distributing copies of, or using. Once again, the evidentiary support for the district court's conclusion that DigiCourt is an infringing software was absent, necessitating remand for further fact-finding on including DigiCourt within the injunctive relief.

On remand, the district court directed the parties to file supplemental briefs in support of their positions on the issue of whether DigiCourt was an infringing software that should also be enjoined. The district court entered formal Findings of Fact and Conclusions of Law by Order of February 16, 2007, and reinstated in full its original Opinion and Order awarding statutory damages and injunctive relief, thereby including

DigiCourt software within the scope of that ruling. Defendants moved for reconsideration, which was denied by Order of April 3, 2007. This appeal followed.

## II. ANALYSIS

The primary issue presented in this third appeal is whether the district court abused its discretion when, on remand, it reinstated its prior award of statutory damages and injunctive relief. A secondary issue is Plaintiff's request for an award of legal fees for this appeal pursuant to 17 U.S.C. § 505. This latter request is denied for the same reasons previously articulated by this Court in the earlier appeal, Case No. 05-2101, wherein Plaintiff presented a similar request. The instant appeal is not frivolous as evidenced herein, nor did Plaintiff file a separate motion for an award of fees in accordance with Federal Rule of Appellate Procedure 38. We therefore turn now to the primary issue before us.

### A. Standard of Review

As noted in the prior appeal, an award of statutory damages and the scope of permanent injunctions under the Copyright Act are reviewed on appeal for an abuse of discretion. *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 639 (6th Cir. 2001); *S. Cent. Power Co. v. IBEW, Local Union 2359*, 186 F.3d 733, 737 (6th Cir. 1999). Issues of law are reviewed *de novo,* while factual findings are left undisturbed unless clearly erroneous. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 545-46 (6th Cir. 2003) (review of statutory damage award in context of Anticybersquatting Consumer Protection Act). Moreover, the Supreme Court has clarified that "'[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence

-8-

is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Ellis v. Diffie*, 177 F.3d 503, 505-06 (6th Cir. 1999).

### B.    Review of the Merits

Defendants, continuing to proceed pro se, raise a number of arguments on appeal. Many of the questions they pose and arguments they advance are directed to the merits of the prior two rulings by this Court.  Those rulings are not the subject of this appeal; Defendants' questions and arguments regarding our previous rulings simply are not relevant to this third appellate proceeding.  What is properly before us are Defendants' challenges to the lower court's subsequent determination on remand.

### 1.    Statutory Damages

The district court defaulted Defendants on the issue of infringement, and Defendants are subject to the remedy provisions under the Copyright Act.  This Court's prior decision recognized that infringement had occurred.  Therefore, despite being uncertain, damages are in order.  *See Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562 (1931) ("The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.").  Digital Filing Systems chose the option of recovering statutory damages under § 504(c) in lieu of actual damages.  Section 504(c) of the Copyright Act permits a copyright owner "to recover, instead of actual damages and profits, an award of statutory damages.

. . ., in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In copyright infringement cases, the district court has discretion to award statutory damages of any amount between this minimum and maximum for each infringement.

Having concluded that infringement occurred, and based on Plaintiff's election of statutory damages, the district court was obligated to make an award of statutory damages for each infringement, though it has broad discretion concerning the amount awarded within the minimum and maximum statutory boundaries. *See Wildlife Internationale, Inc. v. B. Russell Clements,* 782 F.2d 1044, 1985 WL 14088, *2 (6th Cir. Dec. 3, 1985) (unpublished table decision); *see also Jewell-La Salle Realty Co. v. Buck,* 283 U.S. 202, 206 (1931) (award of minimum statutory damages where other proof of actual damage was lacking).

The district court awarded $67,500.00 in statutory damages, finding there were 90 infringements and assessing the statutory minimum of $750.00 for each infringement. The damage statute itself places wide discretion in the assessing court to set appropriate damages within the statutory limits. *Zomba Enter., Inc. v. Panorama Records, Inc.,* 491 F.3d 574, 587 (6th Cir. 2007) (citing *Douglas v. Cunningham,* 294 U.S. 207, 210 (1935) (Congress's purpose in enacting the statutory-damage provision of the 1909 Copyright Act and its delineation of specified limits for statutory damages "take[ ] the matter out of the ordinary rule with respect to abuse of discretion"); *Broad, Music, Inc. v. Star Amusements, Inc.,* 44 F.3d 485, 487 (7th Cir. 1995) (interpreting the modern Copyright Act and noting "that the standard for reviewing an award of statutory damages within the allowed range

is even more deferential than abuse of discretion")). Indeed, historically one of the reasons statutory damages were awarded is because sufficient proof of actual damages was lacking. *See F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952) ("the amount of damages suffered was not computable from the testimony. . . . warrant[ing] resort to the [damage] statute in the discretion of the court, subject always to the statutory limitations").

> 'The phraseology of the section was adopted to avoid the strictness of construction incident to a law imposing penalties, and to give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits.'

*Woolworth,* 344 U.S. at 231 (quoting *Douglas v. Cunningham,* 294 U.S. 207, 209 (1935)).

> 'In other words, the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum. Within these limitations the court's discretion and sense of justice are controlling, but it has no discretion when proceeding under this provision to go outside of them.'

*Woolworth,* 344 U.S. at 232 (quoting *L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 106-07 (1919)).

While clearly the $750.00 per infringement assessed by the district court is reasonable because it falls within the permissible statutory damage boundaries, the $750.00 per infringement is not what lies at the heart of this appeal. Rather, it is the trial court's factual findings, in particular as they pertain to DigiCourt, and its finding that there were 90 infringements. DigiFile, the computer software found to be infringing, and ProFile, Plaintiff's copyrighted software, are both used for scanning/imaging and indexing of documents. DigiCourt, on the other hand, is a separate case management software

program.[2]  Defendants have a separate copyright for DigiCourt.  Plaintiff has not argued that the DigiCourt program itself infringes upon its copyrighted ProFile software, nor disputed Defendants' rightful ownership of this software.  At the time of the underlying damages ruling, Plaintiff did not offer a management software serving the same function as DigiCourt.

DigiCourt's connection with this litigation turns upon the nature and extent to which Defendants' infringing software, DigiFile, was made a part of the DigiCourt software sold by Defendants.  To the extent it was sold as available with and included in, or packaged with, the DigiCourt program, an infringement violative of the Copyright Act has occurred.  Basically, the parties dispute how DigiFile was packaged or bundled with DigiCourt.

The district court's first damages ruling, the July 20, 2005, Opinion and Order, stated simply that "Plaintiff has identified 90 copies of the infringing software product in 30 identified locations within the United States.  The court will multiply each of the works by the statutory minimum of $750 and award Plaintiff $67,500."  This reference to 90 copies came from the May 3, 2005, declaration of Pearl M. Holforty provided with Plaintiff's original motion for damages.  That declaration represented that she is, and has been, the Manager of Digital Filing Systems from 1995 to the present.  She attached to her declaration a list of some of Defendants' customers, most of whom she represents were identified by Frontier Consulting, one of Defendants' U.S. distributors.  Ms. Holforty states two of the listed customers were contacted to verify their status as customers of

---

[2]There is another case management product developed by Defendants and referred to in the record as DigiRecord, which performs functions similar to DigiCourt but was designed for a different type of county office located within local courthouses.

Defendants. Eight of the purported customers on the list were identified in 2002 from Defendants' website. Holforty represents that their status as customers was verified by correspondence sent directly to each customer. Also significant is Holforty's declaration that "at least 90 copies of the infringing software product" were present at the 30 customer locations identified on the list. She explains that this "number of licenses at each customer site is an estimate based on discussions with three counties."

The lower court's award of the statutory minimum for 90 copies was based upon Holforty's declaration. However, the declaration does not define what she meant by "the infringing product;" that is, whether Holforty is referring to DigiFile specifically or simply Defendants' sales of the umbrella image management software DigiCourt, a point previously noted by this Court in its May 15, 2006, Order in Appeal No. 05-2101. The fatal deficiencies in Holforty's statements that, in turn, rendered the lower court's reliance upon her declaration misplaced, were described as follows in this Court's prior ruling:

> In her declaration, the plaintiff's manager, Pearl M. Holforty, did not indicate the name of the infringing product purchased or otherwise verify that the infringing product was derived from ProFile. Moreover, Holforty's declaration generally lacks sufficient specificity. Three statements in particular are worth noting. First, the declaration states that "most customers on Attachment 1 were provided by Frontier Consulting and verified by contacting two of the listed customers," but the declaration does not indicate who the two customers were or provide affidavits from them. Second, the declaration states that other customers "were verified by direct correspondence," but the declaration does not include copies of the correspondence or furnish other corroboration. Third, the declaration states that "[t]he number of licenses at each customer site is an estimate based on discussions with three counties," but the declaration again does not name the counties or detail the discussions. Because the declaration does not give adequate information about the infringing software or the customers, the award of statutory damages will be vacated.

-13-

On remand, Plaintiff came forth with additional documentation, and Defendants were given the opportunity to file a brief on damages. Moreover, the district court issued specific findings based upon this supplemental evidence and argument by the parties. Those findings included that "Defendants' sales of the DigiCourt program included sales of the infringing DigiFile program."

The district court's supplemental findings on February 16, 2007, confirm that DigiCourt was not a software identified in Plaintiff's Complaint. But the lower court implicitly found DigiCourt relevant to the issue of statutory damages for purposes of calculating the number of infringements because the declarations of Plaintiff's expert, Michael Todd Holforty, included in Plaintiff's supplemental filing confirm that a demo version of the DigiCourt software contained the infringing software DigiFile as a clickable item, and that versions 2.0 and 3.0 of DigiCourt examined by Mr. Holforty at two customer courthouse locations also contained the DigiFile imaging software. The district judge remarked that "From this [Mr. Holforty] concluded that the software which this Court and the Court of Appeals affirmed as being offending and infringing on Plaintiff's product, DigiFile, is integrated and embedded in the DigiCourt software," and that "Mr. Holforty concluded from this that the DigiFile imaging software was integrated and embedded in the DigiCourt Pro version 3.0 software and the DigiCourt version 2.0 software."

Holforty[3] describes three specific instances where he documented observing the DigiFile software. The first was his visit to Defendants' website in 2003, when he observed

---

[3]Apparently Michael Holforty is the son of Pearl Holforty. Defendants moved the district court to strike Mr. Holforty's declaration, which motion was denied. Despite the familial relationship, Mr. Holforty's declaration sets forth his background and training in computer software science.

that "[t]he DigiFile product was integrated and embedded in the demo version of DigiCourt that I accessed and viewed on the website." The second was on August 25, 2005, while on site at the Garza County, Texas, Courthouse. Holforty declares that "[t]he DigiFile imaging software was integrated and embedded in the DigiCourt Pro version 3.0 software," and "in the DigiRecord software." The third occurred on May 25, 2006, while on site at the Jack County, Texas, Courthouse, where he observed that "[t]he DigiFile imaging software was integrated and embedded in the DigiCourt version 2.0 software."[4] Thus, at the website demo and at the two courthouses he visited, he noted the presence of the DigiFile program within the DigiCourt system installed at those courthouses.

Defendants maintain DigiFile is a program separately sold and installed from that of DigiCourt, and thus the fact that DigiFile may be a clickable item on the DigiCourt menu does not equate with a customer having actually paid for and had the software installed such that an infringement has occurred. As part of their supplemental briefing, Defendants offered the expert declaration of Sameer Mehra, who stated he had full access to and had examined Defendants' DigiCourt software and observed that DigiFile was not accessible via, and integrated within, the DigiCourt software.

The district judge reviewed and weighed the evidence submitted by both parties on remand, ultimately concluding that the expert information submitted by Plaintiff pertaining

---

[4]The various other declarations offered by Plaintiff in its supplemental briefing do not speak to the question of whether DigiFile in particular was viewed and removed from particular client computers. These declarations merely confirm generally that *DigiCourt* was found and removed from the computers. The one exception is the affidavit of Armando Balderrama, who was hired to remove software. He states that DigiRecord, DigiCourt and *DigiFile* software have been removed from three workstations and one server at the Reagan County Clerk's offices. Coincidentally, and as subsequently explained herein, the Reagan County District Clerk and County Clerk's offices are among Mr. Mims' list of customers who purchased DigiCourt and DigiRecord *with* imaging software, which is consistent with Balderrama's affidavit's statement that DigiFile was found.

to the DigiCourt software was more credible. The lower court based this credibility finding upon the specificity contained in Mr. Holforty's declarations, and his personal observations of the software on particular dates and at specific customer locations. Conversely, Defendant's expert failed to specify the date he viewed DigiCourt, the version examined, or whether it was a working version of the software that was accessed. This credibility assessment by the district court and her findings of fact related thereto are sound. We cannot find fault with the district court's consideration of this evidence, nor would it be proper for us to do so, under the applicable standard.

Our role in reviewing the district judge's findings of fact upon which she decided to reinstate the prior award is a limited one, dictated by the boundaries set by the Federal Civil Rules. Under those rules, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R. Civ. P. 52(a). This "clearly-erroneous standard – with its deference to the trier of fact – is the rule, not the exception." *Anderson v. City of Bessemer City,* 470 U.S. 564, 575 (1985).

The plain language of Rule 52(a), with its use of the conjunctive "and," dictates that district court factual findings be given appropriate deference, whether based on credibility determinations, or on physical or documentary evidence, or on inferences from other facts. *Id.* at 574. Moreover, the rule calls for greater deference to a trial court's credibility findings. The Supreme Court describes this greater deference in this manner:

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

-16-

*Id.* at 575.

Mr. Holforty's observations at the two courthouse locations are consistent with other evidence submitted upon supplemental briefing. In its Supplemental Reply, Plaintiff offered the customer list compiled by one Michael Mims, who is one of Defendants' U.S. resellers. Plaintiff sued Mims in Texas in conjunction with garnishment and enforcement proceedings on the Michigan judgment; this list was provided by Mims in conjunction with that proceeding. Both the Garza County, Texas, Courthouse and the Jack County, Texas, Courthouse visited by Holforty are included on Mims' customer list. Mims' list indicates that the County Clerk and District Clerk offices of Jack and Garza Counties purchased DigiCourt and DigiRecord software *with* imaging software, which would also be consistent with Mr. Holforty's observation of DigiFile software within DigiCourt when he examined those computers.

As further evidence of the DigiCourt-DigiFile connection, Plaintiff points to statements made in a cross-claim filed by Mims against Plaintiff in that enforcement action for loss of customers and destruction of his business, statements like "[b]oth DigiCourt and DigiRecord had DigiFile (the scanning software that was the subject of the copyright infringement action in Michigan between Digital and Judgment-Debtors) imbedded in them." This statement from the cross-claim was also repeated by the district court in its factual findings, emphasizing Mims' description that the DigiFile software was *imbedded* in DigiCourt and DigiRecord.

We are obligated to give the district court's review and interpretation of this evidence great deference, as long as its account of the evidence is plausible in light of the record viewed in its entirety. We should not reverse the district court even were we convinced that

we would have decided the case differently. Rather, "appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Anderson,* 470 U.S. at 573-74. The district court determined that a statutory minimum for 90 infringing copies was just, despite Defendants' protests and offerings of proof which the district judge rejected. We cannot say that this credibility assessment of Defendants' testimonial proof and Defendants' other proof on damages, and the lower court's acceptance of Plaintiff's proof and the reasonable inferences to be drawn therefrom was clear error.

In seeking reconsideration before the district court, Defendants go to great lengths seeking to negate the district judge's finding that DigiFile was embedded within the sales of DigiCourt software. Defendants attached an affidavit from Mims wherein he seeks to clarify a statement made by his counsel in the counterclaim to the effect

> that DigiCourt and DigiRecord has DigiFile imaging software imbedded in it. This is not technically accurate, as explained below. DigiFile imaging software has always been priced and sold as separate software. When my business, ODS, a reseller, introduced DigiCourt case management software in 2003, the customers had the option of purchasing imaging software as a separate module. . . . DigiRecord for county clerks had the same option: DigiFile imaging software could be purchased as separate software module and then included as part of the DigiRecord software.

Mims' affidavit further states that "DigiCourt JP and Municipal software was never sold with imaging because the State did not require JPs or cities to keep copies of their tickets. The imaging software was never imbedded in their case management software." The district court did not note or discuss these sworn statements by Mims, or the extent to which they impacted any finding that the DigiFile software was automatically included in and imbedded within a customer's purchase of DigiCourt.

Plaintiff offered no evidence to directly contradict these statements. Plaintiff's reply brief attached a supplemental affidavit from Mr. Holforty that sought to provide more detail on DigiCourt versions 2.0 and 3.0 and their integration and embedding of DigiFile within DigiCourt, based upon his examination of these versions at the Jack and Garza County locations. To the extent Holforty is implicitly opining that the infringing software can be included in version 2.0 and is essentially automatically available in 3.0, the record contains no other information to shed light on which version was installed at each of the various customer locations listed by Pearl Horforty in her declaration. Pearl Holforty's list of customers who possessed a combined total of 90 copies of the "infringing software" included offices that, according to Mims, were never sold scan/imaging software with their case management software.

The weakness in this reconsideration evidence is its emphasis upon sales; that is, whether DigiCourt or DigiRecord was priced, sold, or purchased with DigiFile imaging software. Despite these evidentiary offerings on reconsideration, Defendants and Mims do not make clear whether a copy of the infringing product existed within, as a part of, or in conjunction with Defendants' case management software sold to a customer. Their emphasis is upon the product purchased. The emphasis of the Copyright Act, in contrast, is not on whether a sale of the infringing product occurred. The Act provides copyright protection to "original works of authorship fixed in any tangible medium of expression." This includes computer programs, which fall under the Act's protection of "literary works." 17 U.S.C. § 102(a). Elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) *copying* by the defendant. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Zomba Enterprises, Inc. v. Panorama Records, Inc.,* 491 F.3d 574, 581 (6th Cir. 2007).

Defendants protest that DigiFile is purchased separately, for a separate price, in order to obtain access to the software program. Even presuming this is the case, it does not evidence clear error in the district court's factual finding of the number of infringing copies produced. Each infringement for copyright damage calculation purposes is not driven by whether Defendants accomplished a sale of the software for a profit. It is dictated by whether a copy of the software was made. *See Thoroughbred Software International, Inc. v. Dice Corp.,* 488 F.3d 352, 359 (6th Cir. 2007) (concluding, in assessing actual damages for copyright violation, that the infringer was "liable for the unpaid license fees for all the unauthorized copies it made, regardless of whether these copies were accessible to or used by [the infringer's] customers"); *see also Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1573 (6th Cir. 1996) (rejecting appellant's argument that patent damages were measured by the number of devices *sold* rather than the number *manufactured,* as patent law excludes others from making, using, or selling patented subject matter).

In this Court's view, documentation of a precise number of customers separately purchasing and paying a license fee for DigiFile is not required. Defendants would claim such does not exist, yet it is undisputed that DigiFile was in fact observed and accessed during on-site visits by Plaintiff's representative. Defendants have not been forthcoming with information even as to those confirmed observations, and evidence of other sales of DigiFile specifically have not been forthcoming from Defendants even though Defendants continue to maintain that DigiFile is not an infringing product.

The record is at best ambiguous on whether DigiFile was packaged with sales of DigiCourt/DigiRecord and merely inaccessible to the customer because it had not been separately purchased, or whether it physically was not included in each sale of Defendants' case management software. Perhaps Defendants' records were incomplete; however, if

determining the number of infringing copies is impeded by a defendant's failure to come forth with accurate or complete records, a court may draw adverse inferences from this lack of information. Defendants have not offered information or evidence that DigiFile is not embedded or otherwise physically contained within the DigiCourt program with its distribution. In other words, there is no evidence that a customer purchasing DigiCourt software from Defendants who thereafter decides to purchase DigiFile undergoes a separate installation or is sent additional, separate software, etc. Absent evidence of such, it is reasonable to infer the fact, as did the district judge in this case, that the DigiFile program is contained or otherwise packaged within and accompanies the distribution of DigiCourt. Plaintiff should not otherwise be penalized in assessing damages where it does not have the ability to verify or contest representations by the liable infringer. *See Woolworth,* 344 U.S. at 233.

Defendants' own failure to be forthcoming in its conveyance of unambiguous, accurate and complete sales information as to its software products has generated adverse consequences which only Defendants should bear. Due to Defendants' default, Digital Filing Systems has had little opportunity to conduct discovery on the extent of Defendants' production and sales of the DigiFile product, being left to address what limited information in this respect Defendants came forth with on supplemental briefing. Since damages are difficult to ascertain, doubts about the proof should be resolved against Defendants.

> [I]f actual damages cannot be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer.

*Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1572 (Fed. Cir. 1996) (citations omitted).

In determining damages, parties should not be rewarded for failing to respond or cooperate with discovery. *Monogram Models, Inc. v. Industro Motive Corp.,* 492 F.2d 1281, 1287-88 (6th Cir. 1974) (infringer's conduct in remaining silent prevented ascertaining facts concerning damages); *Bell v. Pro Arts, Inc.,* 511 F.2d 451, 453 (6th Cir. 1975) (per curiam) (appellant infringer's failure to cooperate in discovery rendered it impossible to ascertain damages); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("when the amount of the damages [for patent infringement] cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer"); *Sensonics, Inc.,* 81 F.3d at 1572 (where defendant in patent infringement action failed to retain production records during litigation period, proper for district court to draw strong adverse inference records would have been unfavorable to defendant).

The district court was properly in the position to gauge the reasonable inference to be made from the evidence submitted pertaining to sales of DigiCourt and, in particular, the embedding of DigiFile within DigiCourt. The record demonstrates that the district court judge considered carefully the available testimonial declarations and documentation provided by the parties upon remand prior to determining that the statutory award should be reinstated. Certainly, it was within the district court's province to resolve any uncertainties about the nature and extent to which DigiFile was sold as a package within DigiCourt against Defendants, and to determine what evidence it deemed most credible after being provided with the testimonial declarations and documentary evidence from the parties. Under these evidentiary circumstances, Defendants cannot now be heard to complain about any inaccuracy in the district judge's assessment where any purported inaccuracies were at least in part attributable to Defendants. They, as the infringers, should bear the burden of any inexactitude. *See Nickson Industries, Inc. v. Rol Mfg. Co.,* 847 F.2d 795, 799 (Fed. Cir. 1988).

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. . . . [T]he risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party.

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931) (citations omitted). Defendants have failed to show that the district judge's findings of fact were clearly erroneous.

In summary, while given great flexibility, a damage assessment is not without limits. In the second appeal, addressing the district court's initial award of statutory damages, there was virtually no explanation or articulation by the district court as to how it reached its assessment and considered it just. Thus, as flexible and as discretionary as the statute may be, some explanation is required. On remand, the district court sought further proof from both parties, then reached express factual findings and legal conclusions therefrom that, in the end, it determined confirmed its initial damage assessment. Under the clear error standard for those factual findings, and given that those damages fall within the statutory damage range, and given the district judge's discretion in determining what is considered to be a "just" statutory damage award, the district judge's decision must be upheld. The district court's inference that Defendants provided a copy of DigiFile software within copies of case management software sold and distributed by it was reasonable based upon the evidence before it. It is this copying, rather than the sale of, the program that constitutes the infringing conduct. *See* 107 U.S.C. § 106 (owners exclusive right to

-23-

reproduce the copyrighted work and distribute copies to the public); § 501 (violation of owner's exclusive copyright rights is an infringement, and the one so doing is an infringer).

### 2. Injunctive Relief

Under the Copyright Act, Defendants are subject to an injunction restraining them from further infringement, and they may be required to turn over all infringing copies. "Any court having jurisdiction of a civil action arising under this title may, ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Permanent injunctions are granted where liability is determined and a continuing threat to a copyright exists. Such injunctions may be issued without an evidentiary hearing where no triable issues of fact are involved. *United States v. Miami Univ.,* 294 F.3d 797, 815 (6th Cir. 2002).

By her decision on remand reinstating her prior Order of Judgment for damages and injunctive relief, the district judge ordered that:

> Pursuant to 17 U.S.C. § 502, an injunction issues, restraining Defendants from offering for sale, selling, reproducing, preparing derivative works, distributing copies of, or otherwise using the software product DIGIFILE, DIGICOURT or PROFILE, and ordering them to refrain from asserting any contract other than the 1999 Agreement.
>
> . . . [P]ursuant to 17 U.S.C. § 503, that all copies of any software identified as DIGIFILE, DIGICOURT, or similar software obtained from Defendants or a reseller or distributor of Defendants be impounded by Plaintiff and destroyed at Plaintiff's discretion, whether in tangible media of expression or disposed of electronically.

Plaintiff does not dispute that Defendants' case management software, DigiCourt and DigiRecord, does not infringe its ProFile product, nor did the district court so find in either the default judgment of infringement or its subsequent findings regarding damages. In light of this undisputed circumstance, the scope of the lower court's award of injunctive relief must be modified.

-24-

The above quoted sections of the district court's Order of Judgment, in particular the use of the word "or", impermissibly includes DigiCourt software generally in the scope of the injunction, regardless of whether DigiFile was actually integrated and imbedded within the DigiCourt program sold to a particular customer. While under the applicable legal standards that finding was an appropriate one for purposes of assessing and calculating statutory monetary damages, it is overly inclusive for purposes of injunctive relief. That this is simply too broad is perhaps best exemplified by comparison to the scope of injunctive relief Plaintiff in its original motion proposed was appropriate to order under the Copyright Act:

> 1. That pursuant to 17 U.S.C. § 502(b) that the infringement of Plaintiff's registered copyright cease and that Defendants stop the sale or transfer of the DIGIFILE software product, *or any product that **includes** the DIGIFILE product, such as DIGICOURT and DIGIRECORD.*
>
> 2. That pursuant to 17 U.S.C. § 503(b) that any infringing copies of the work in the United States be impounded and destroyed, thus permitting Plaintiff to offer to replace them with copies of Plaintiff's work at a negotiated price, including any products that **include** *the DIGIFILE software, such as DIGICOURT and DIGIRECORD.*

(emphasis added). Thus, Plaintiff acknowledges that only works which specifically include the infringing software DigiFile should be enjoined. However, the injunction as written allows for impoundment and destruction of DigiCourt generally, without verification that the actual DigiFile program is also present. For this reason, remand for the limited purpose of modifying the scope of injunctive relief is necessary.

### III. CONCLUSION

For the reasons set forth herein, the district court's decision confirming its prior award of statutory damages is hereby **AFFIRMED** and its decision confirming its prior award of injunctive relief is hereby **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

-25-