# United States Court of Appeals
## For the First Circuit

No. 10-1587

HILDA CURET-VELÁZQUEZ, EDUARDO CURET-VELÁZQUEZ,
HILDA VELÁZQUEZ-COTO,

Plaintiffs, Appellees,

v.

ACEMLA DE PUERTO RICO, INC.;
LATIN AMERICAN MUSIC CO., INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Mauricio Hernández-Arroyo, with whom José Luis Torres and Law Offices of Mauricio Hernández-Arroyo, were on brief for appellants. Samuel F. Pamias-Portalatín, with whom Aileen E. Vázquez-Jiménez and Hoglund & Pamias, P.S.C., were on brief for appellees.

August 29, 2011

**TORRUELLA**, **Circuit Judge**.  This appeal concerns a copyright infringement claim involving four songs that Puerto Rican composer Catalino "Tite" Curet-Alonso ("Tite Curet") authored. Appellees Hilda Curet-Velázquez, Eduardo Curet-Velázquez and Hilda Velázquez-Coto (collectively, the "Curet Heirs") filed a complaint against the appellants, ACEMLA de Puerto Rico, Inc. ("ACEMLA") and Latin American Music Co., Inc. ("LAMCO"), alleging copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101, et seq.  The complaint also included Puerto Rico law claims for, inter alia, breach of contract, nullity of contract, and rescission of contract.  The district court adopted the magistrate judge's report and recommendation granting in part the Curet Heirs' motions for summary judgment and finding that the appellants had infringed on the Curet Heirs' valid copyrights on four of Tite Curet's songs.  After a bench trial to determine damages and to address the Curet Heirs' contractual claims, the court also imposed the maximum statutory damages for the copyright infringements pursuant to 17 U.S.C. § 504(c)(1).

Appellants now ask us to find that the district court erred in, among other things, (a) extending the deadline for discovery; (b) not finding that the Curet Heirs' claims were barred by the Civil Code's statute of limitations for rescission claims, P.R. Laws Ann. tit. 31, § 3500; (c) allowing the Curet Heirs' expert witness to testify regarding matters outside his expert

-2-

report, not excluding his testimony as a sanction; and (d) imposing the maximum statutory damages pursuant to 17 U.S.C. § 504(c)(1). For the reasons explained hereafter, we affirm the judgment of the district court.

## I. **Background**

### A. **Facts**[1]

Tite Curet was a prolific Puerto Rican composer who passed away on August 5, 2003, leaving three heirs. LAMCO is a publisher that owns music through contracts with composers and ACEMLA is a performance rights society. Tite Curet's musical catalog with ACEMLA and LAMCO includes approximately 1100 to 1200 compositions.

At issue in this case are four of Tite Curet's songs, Pueblo Latino, Distinto y Diferente, Periódico de Ayer, and Planté Bandera. On August 4, 1995, Tite Curet signed contracts with LAMCO and ACEMLA assigning and conveying the licensing rights to certain songs, including the four songs at issue here. According to these contracts, LAMCO and ACEMLA were obligated to provide Tite Curet with bi-annual royalty reports on February 15th and August 15th of each year. Tite Curet also signed the June 9, 1998 Rider (the

---

[1] For additional details, refer to the magistrate judge's report and recommendation, Curet-Velázquez v. ACEMLA de P.R., Inc., No. 06-1014 (ADC), 2008 WL 4006701, at *4-6 (D.P.R. Aug. 26, 2008), and the district court's post-trial opinion and order, Curet-Velázquez v. ACEMLA de P.R., No. 06-1014 (ADC), slip op. (D.P.R. Mar. 31, 2010).

"1998 Rider"), which extended the previously mentioned contracts indefinitely in exchange for $6000. However, as the Curet Heirs' expert testified, ACEMLA and LAMCO never paid Tite Curet the $6000.

ACEMLA and LAMCO failed to comply with the requirement to provide bi-annual royalty reports. They failed to issue separate royalty reports between 1995 and 2001 but instead compiled the royalties data for those years in the 2002 and 2003 royalty reports. Further, although ACEMLA and LAMCO are separate entities and should have provided separate reports, they submitted combined data in the 2002 and 2003 royalty reports. They failed to provide any royalty reports for 2005 and did not provide the 2006 and 2007 royalty reports until January 15, 2009. To make matters worse, the district court found that the reports contained inconsistencies and accounting discrepancies. See Curet-Velázquez v. ACEMLA de P.R., No. 06-1014 (ADC), slip op. at 10, 14-17 (D.P.R. Mar. 31, 2010). ACEMLA and LAMCO also issued several checks to Tite Curet as royalty reimbursements or as performance-based bonuses, but accounted for them as royalty advances. ACEMLA and LAMCO also failed to report royalties and to issue payments with respect to the same. See id. at 10-12.

B.    Procedural History

The Curet Heirs filed a complaint against ACEMLA and LAMCO in the United States District Court for the District of Puerto Rico seeking injunctive and monetary relief pursuant to the

-4-

Copyright Act of 1976, as amended, 17 U.S.C. § 101, et seq. The district court had jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338. The complaint also included Puerto Rico law claims for breach of contract, nullity of contract, rescission of contract, unfair competition, tort, unjust enrichment and moral rights. The district court had jurisdiction over these claims pursuant to 28 U.S.C. §§ 1338 and 1367.

On April 11, 2006, the Curet Heirs filed a motion for summary judgment and a statement of facts in support thereof. This initial motion for summary judgment stated that no genuine issue of material fact existed with respect to ACEMLA's and LAMCO's infringement of the Pueblo Latino copyright. The district court set September 15, 2006 as the deadline for ACEMLA's and LAMCO's response to the Curet Heirs' motion for summary judgment. ACEMLA and LAMCO filed their opposition to the motion for summary judgment on the deadline date, and the Curet Heirs filed a sur-reply on October 27, 2006.

On February 22, 2007, the Curet Heirs filed a second motion for summary judgment and a second statement of material facts alleging that no genuine issue of material fact existed with respect to ACEMLA's and LAMCO's infringement of Pueblo Latino, Distinto y Diferente, Periódico de Ayer, and Planté Bandera. ACEMLA and LAMCO filed their opposition to the second motion for summary judgment on April 13, 2007.

On June 19, 2007, the district court issued an order referring the motions for summary judgment to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). On November 21, 2007, the magistrate judge issued a report and recommendation granting in part and denying in part the motions for summary judgment. Curet-Velázquez v. ACEMLA de Puerto Rico, Inc., No. 06-1014 (ADC), 2008 WL 4006701, at *4 (D.P.R. Aug. 26, 2008). The magistrate judge recommended granting summary judgment regarding 1) the copyright infringement claim regarding the licensing of the performance of Pueblo Latino at a concert at Hostos Community College and 2) the copyright infringement claims regarding the licenses issued as to Planté Bandera and Periódico de Ayer.[2] Id. at *14. On January 2, 2008, ACEMLA and LAMCO filed their objections to the report and recommendation, but despite the objections, the district court adopted the report and recommendation in full in an order issued on August 26, 2008. Id. at *1.

The district court then held a bench trial to address two issues: 1) the amount of damages and 2) the Curet Heirs' claims of breach of contract and rescission. During the trial, the court heard testimony from Félix Norman Román-Negrón ("Román"), the Curet Heirs' expert witness, regarding the royalty reports and his

---

[2] The Curet Heirs were unable to produce admissible evidence to establish that ACEMLA and LAMCO committed infringements of Distinto y Diferente. Curet-Velázquez, 2008 WL 4006701, at *11-12.

-6-

calculation of the damages to the plaintiffs. His valuation of the Curet Heirs' damages was based on two value theories: 1) the Opportunity Cost Theory and 2) the Conclusion of Value Theory ("CVT"). ACEMLA and LAMCO moved to strike Román's testimony, arguing that he was not qualified as an expert in copyright infringement and challenging the value theories he used to assess the Curet Heirs' damages. On March 31, 2010, the court issued its opinion and order, and entered judgment. Curet-Velázquez, No. 06-1014 (ADC), slip op. at 17-18.

The district court concluded that Román was qualified as an expert witness, but rejected the use of the Opportunity Cost Theory, concluding that the theory did not pass muster under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Curet-Velázquez, No. 06-1014 (ADC), slip op. at 4-5.

With respect to the copyright infringement claim, the court concluded that ACEMLA's and LAMCO's copyright infringements were not "willful" under the Copyright Act because at the time of the infringements ACEMLA and LAMCO were appealing the district court's ruling regarding the ownership of Pueblo Latino. Id. at 21. The court then proceeded to impose the maximum statutory damages allowed under 17 U.S.C. § 504(c), which was $30,000 for

each of the four infringements,[3] for a total of $120,000 in statutory damages.  Id. at 21-23.  The court reasoned that it was impossible for it to determine the amount of damages due to ACEMLA's and LAMCO's incomplete records.  Id. at 22.

The court also concluded that the statute of limitations for actions arising under the Commonwealth's Commerce Code or under Article 940 of the Commerce Code, P.R. Laws Ann. tit. 10, § 1902, did not bar the Curet Heirs' claims.  Id. at 17-18.  The court noted that even if this statute of limitations were to apply, it would not bar the Curet Heirs' claims because of the on-going nature of ACEMLA's and LAMCO's actions.  Id. at 18.  Further, the court determined that the applicable statute of limitations was the fifteen year statute of limitations for breach of contract pursuant to Article 1864 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5294, and that the claims fell within the required limitation.  Id. at 18-19.

ACEMLA and LAMCO filed a notice of appeal on April 15, 2010.  This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

---

[3]  The district court determined that ACEMLA and LAMCO committed two infringements of the Pueblo Latino copyright and one infringement each of the Periódico de Ayer and Planté Bandera copyrights.  Curet-Velázquez, No. 06-1014 (ADC), slip op. at 20.

-8-

## II. Discussion

### A. Copyright Act Preemption and Statute of Limitations

Appellants contend that the Copyright Act of 1976 preempts the Curet Heirs' cause of action under Puerto Rico law for rescission of contract, P.R. Laws Ann. tit. 31, § 3491, and that the statute of limitations for actions of rescission, id. § 3500, bars the Curet Heirs' action seeking such rescission. Appellants failed to properly raise these arguments at the district court level and, absent compelling circumstances, these arguments are waived.

We do not find any evidence in the record below that ACEMLA and LAMCO argued that the Copyright Act preempts the cause of action for rescission of contract under Puerto Rico law. "It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991), cited with approval in Horne v. Flores, 129 S. Ct. 2579, 2617 (2009); see, e.g., Boston Celtics Ltd. P'ship v. Shaw, 908 F.2d 1041, 1045 (1st Cir. 1990); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987). There is nothing sufficiently compelling about this case to warrant relaxation of such a fundamental rule. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).

With respect to the statute of limitations argument, ACEMLA and LAMCO argue that they specifically raised the argument in their answer to the Curet Heirs' complaint where they stated, "Claimant's allegations are time barred by the statute of limitation," without specifying which statute of limitations was applicable. During the closing arguments at the bench trial, appellants argued that the applicable statute of limitations was Article 948 of the Puerto Rico Commerce Code, P.R. Laws Ann. tit. 10, § 1910, et seq. See Curet-Velázquez, No. 06-1014 (ADC), slip op. at 17-18. As the district court noted, both during trial and in their post-trial brief, ACEMLA and LAMCO cited to a provision of the Commerce Code that applies to actions that prescribe in one year, none of which apply to the claims at issue in this case.[4] Id. at 18. The appellants' post-trial brief failed to provide

---

[4] The statute reads, in pertinent part,

The following shall prescribe after one year:

(1) Actions arising from services, works, provisions, and furnishing of goods or money for the construction, repair, equipment, or provisioning of vessels, or to support the crew, . . . .

(2) Actions relating to the delivery of the cargo in maritime or land transportation or to indemnity for delays and damages suffered by the goods transported, . . . .

(3) Actions to recover for the expenses of the judicial sale of vessels, cargoes, or goods, transported by sea or by land, . . . .

P.R. Laws Ann. tit. 10, § 1910.

adequate legal argumentation explaining why the Commerce Code should apply.  See id.  On appeal, appellants now seek to buttress their statute of limitations argument by citing to a different statute of limitations, P.R. Laws Ann. tit. 31, § 3500.  Yet, they fail to explain why they cited to a different statute in the district court.

We cannot say that this argument was clearly raised before the district court, and "[o]verburdened trial judges cannot be expected to be mind readers."  McCoy, 950 F.2d at 22.  We conclude that appellants have failed to make "some effort at developed argumentation . . . .  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  Harriman v. Hancock Cnty., 627 F.3d 22, 28 (1st Cir. 2010) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted).

### B.    Various Objections to the Magistrate Judge's Report and Recommendation

ACEMLA and LAMCO contend that the magistrate judge's report and recommendation with respect to the Curet Heirs' motion for summary judgment was based on erroneous findings of fact and law.  Specifically, they argue that the magistrate judge committed errors of fact and law regarding the validity of the assignment establishing ownership, and the finding that the Harry Fox Agency authorization of licenses constituted infringements.  We have

-11-

examined ACEMLA's and LAMCO's objections to the magistrate judge's report and recommendation and we conclude that they failed to object to the magistrate judge's manner of addressing these issues in the report and recommendation. Therefore, we conclude that these arguments are waived. See Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (agreeing with the district court that the appellant had waived an issue by failing to raise it before the magistrate judge). "[I]t is a virtually ironclad rule that a party may not advance for the first time on appeal . . . a new argument . . . ." Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003).

### C.      Implied License Defense

ACEMLA and LAMCO also argue that the district court erred in deeming their implied license defense waived. See Curet-Velázquez, 2008 WL 4006701, at *3. They argue that "[e]ven if the arguments were more developed in the objections, the factual bases are contained in the record, the complaint, and exhibits to the motions . . . and were undoubtedly raised and argued by defendants."

We review for abuse of discretion a district court's conclusion that a party has waived an issue by failing to adequately assert it before the magistrate judge. See Guillemard-Ginorio v. Contreras-Gómez, 490 F.3d 31, 36 (1st Cir.

-12-

2007). Arguments alluded to but not properly developed before a magistrate judge are deemed waived. See id. at 37.

We conclude that the district court did not abuse its discretion in not addressing an argument not explicitly raised before the magistrate judge. The appellants had "their chance to exhaust their nonexclusive implied license argument in front of the [magistrate judge], but made the affirmative decision not to do [so]." Curet-Velázquez, 2008 WL 4006701, at *3. Their contention that the factual basis for the implied license argument was in the record before the magistrate judge is unavailing. A passing mention that fails to present analysis or any legal theory of support is insufficient to constitute an argument. McCoy, 950 F.2d at 22. A party has a duty "to spell out its arguments squarely and distinctly . . . . [rather than being] allowed to defeat the system by seeding the record with mysterious references . . . hoping to set the stage for an ambush should the ensuing ruling fail to suit." Id. (alterations in original) (internal quotation marks omitted) (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988)). "If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review." Id. Here, the appellants mentioned in passing facts that might have been used to support the argument they now seek to

develop on appeal. The magistrate judge should not have been expected to make the argument for them. The argument is waived.

### D. Discovery and Expert Testimony

ACEMLA and LAMCO contend that the district court abused its discretion when it reopened discovery and ordered simultaneous disclosure of expert reports and that those actions prejudiced them. They further assert that the district court abused its discretion because it permitted the Curet Heirs' expert to testify to matters beyond his report without requiring him to amend his report. We conclude that the district court did not abuse its discretion when it decided to reopen discovery and to allow the expert witness to testify to matters beyond his report.

### 1. Reopening Discovery

District courts have broad discretion in pretrial management matters. Wells Real Estate Inv. Trust II, Inc. v. Chardón/Hato Rey P'ship, S.E., 615 F.3d 45, 58 (1st Cir. 2010). We review discovery orders for abuse of discretion. Remexcel Managerial Consultants, Inc. v. Arlequín, 583 F.3d 45, 51 (1st Cir. 2009). "[W]e may reverse a district court only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Id. (alteration in original) (internal quotation marks omitted) (quoting In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008)).

-14-

At a settlement conference held on October 8, 2008, the court set new deadlines for, among other things, discovery, designation of experts, expert reports, and the deposition of experts. ACEMLA and LAMCO argue that the court's decision to reopen discovery prejudiced them, in part because the court required that the parties submit their expert reports simultaneously. Specifically, ACEMLA and LAMCO argue that the court should have set the deadline for the submission of their expert report for sixty days after the deadline for the Curet Heirs to submit their expert report. They assert that the court's failure to do so prejudiced them because they did not know whether the Curet Heirs would use an expert or what the expert's testimony would cover.

The record reveals that the appellants paint a picture that is convenient for them, but unsupported in fact. Because the parties explicitly agreed to designate experts and exchange reports by a certain date, the appellants cannot claim that they were unprepared for the possibility that the Curet Heirs would use an expert. The district court's October 29, 2008 Settlement Conference Report and Order, which was entered with respect to the October 8, 2008 settlement conference, states that "October 28th was agreed upon to exchange the designation of experts; November 28, 2008 expert reports are due . . . ." (emphasis added).

It appears that what appellants are really complaining about is the court's refusal to grant the requested extensions and not the court's decision to extend discovery. In fact, they themselves requested that the court extend the time further. Although the appellants were aware of the deadline to produce their expert report, they failed to file it on time and, on December 3, 2008, after the November 28, 2008 deadline, they filed a motion titled "Omnibus Motion Regarding Expert Report, Nunc Pro Tunc," requesting an extension until December 11, 2008 to produce the expert report. On December 12, 2008, they filed a motion titled "Motion Requesting Enlargement of Time Opposition to Preclude Expert Witness Nunc Pro Tunc," in which they requested an extension until December 18, 2008 to produce their expert report. On January 13, 2009, ACEMLA and LAMCO filed a motion seeking to extend the time to conclude discovery until February 14, 2009. On January 15, 2009, the court denied all motions requesting an extension of time. Given the appellants' requests, we find it difficult to understand exactly how the appellants were prejudiced by the court's decision to reopen discovery. The district court did not abuse its discretion in reopening discovery.

### 2. Expert Witness

ACEMLA and LAMCO also claim that the district court abused its discretion by allowing the Curet Heirs' expert witness to testify to matters that were not covered in his expert report,

in particular, documents that he received on the day of his deposition and a week before trial. They also objected to Román's qualifications and methodology. The appellants filed a motion to limit the Curet Heirs' expert's testimony to the content of his filed report. The district court nevertheless allowed Román to testify, including about the newly received evidence. The appellants now object to the district court's failure to exclude Román's testimony as a sanction for failing to amend his expert report to reflect new evidence, as Federal Rule of Civil Procedure 26(e)(2) requires. They also appeal the district court's conclusion that Román was a qualified expert witness.

### a. Expert Report Discussion

We review a district court's decision to admit or exclude expert testimony due to a violation of Federal Rule of Civil Procedure 26(e) for abuse of discretion. Boston Gas Co., d/b/a KeySpan Energy Delivery v. Century Indem. Co., 529 F.3d 8, 17 (1st Cir. 2008) (reviewing the district court's decision to preclude an expert witness from supplementing his expert report for abuse of discretion). Further, the court's abuse of discretion must have "resulted in prejudice to the complaining party." Licciardi v. TIG Ins. Grp., 140 F.3d 357, 362-63 (1st Cir. 1998).

Federal Rule of Civil Procedure 26(e)(2) requires a party to supplement information included in the expert report and information given during the expert's deposition. One of the

-17-

purposes of this rule is "to avoid trial by ambush." <u>Macaulay</u> v. <u>Anas</u>, 321 F.3d 45, 50 (1st Cir. 2003). We have "looked to a variety of factors in assessing a claim of error under Rule 26." <u>Licciardi</u>, 140 F.3d at 363. These include "the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response." <u>Id.</u> (alteration in original) (quoting <u>Johnson</u> v. <u>H.K. Webster, Inc.</u>, 775 F.2d 1, 8 (1st Cir. 1985)) (internal quotation marks omitted). "Surprise and prejudice are important integers" in determining whether the district court abused its discretion. <u>Macaulay</u>, 321 F.3d at 51.

Here, appellants complain that Román testified to things he did after his report was rendered without amending his expert report. We have examined the record and note that during the voir dire, plaintiffs' counsel did ask questions about documents that were not included in the report. However, the documents at issue are documents that ACEMLA and LAMCO produced on the day of Román's deposition and about a week before trial. The court noted that Román did not prepare an amended report, but verified that he did not reach any new conclusions or change his opinion based on the new information. Román testified that the new documentation did not change the conclusion in his original report and in fact corroborated the inconsistencies and lack of proper record keeping that he originally identified.

In these circumstances, we conclude that the district court did not abuse its discretion in concluding that no amendment to the expert report was required and allowing the testimony. Here, there was no prejudice to the appellants because Román's testimony briefly referenced new documents that the appellants themselves drafted and had delayed in disclosing. In this case, the expert's testimony did not evidence a different conclusion or opinion from that expressed in his report. Cf. Macaulay, 321 F.3d at 51-52 (affirming the district court's decision to preclude appellant's expert witness where her expert witness attempted to opine on a new theory of liability and the court concluded that this change would cause unfair surprise); Licciardi, 140 F.3d at 359-60, 367 (vacating and remanding for a new trial where the trial testimony of appellee's expert directly contradicted and went beyond his expert report regarding a material issue in the case). Further, appellants cannot claim that the reference to these new documents was an unfair surprise because they themselves prepared and disclosed the documents. See Brennan's Inc. v. Dickie Brennan & Co., 376 F.3d 356, 375 (5th Cir. 2004) (affirming district court's denial of a motion to exclude plaintiff's expert's supplemental report where the district court reasonably believed that the defense expert had access to the supporting work papers and calculations and where the defense expert was already familiar with the underlying data).

### b.  Expert's Qualifications

Appellants also object to the district court's failure to strike Román's testimony because his qualifications and methodology were unreliable.  We review a district court's Federal Rule of Evidence 702[5] rulings for abuse of discretion.  <u>Milward</u> v. <u>Acuity Specialty Prods. Grp., Inc.</u>, 639 F.3d 11, 13 (1st Cir. 2011).

Appellants specifically objected to the reliability of Román's Opportunity Cost Theory.  Although the district court allowed Román to present the theory and did not strike it from the record, it rejected the Opportunity Cost Theory in its opinion and order.  <u>Curet-Velázquez</u>, No. 06-1014 (ADC), slip op. at 5.  Therefore, there was no prejudice to ACEMLA and LAMCO due to the testimony regarding the Opportunity Cost Theory.  We can easily dismiss appellants' argument because the district court ultimately rejected and disregarded the portion of Román's testimony based on his Opportunity Cost Theory, a method that he created and that had

---

[5]  Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

not gained acceptance in the music industry. Id. After reviewing the record we find no abuse of discretion in the district court's determination that Román was a qualified expert. We therefore affirm the district court's decision to qualify Román as an expert and to allow his testimony regarding appellants' accounting, royalty reports and statements.

### E. Statutory Damages

Appellants ACEMLA and LAMCO argue that the district court erred in awarding, pursuant to 17 U.S.C. § 504(c)(1), maximum statutory damages for each of the four infringements that ACEMLA and LAMCO were found to have committed. Specifically, ACEMLA and LAMCO argue that the Curet Heirs did not properly exercise the option to receive statutory damages because their complaint elected to receive an award of either actual damages or statutory damages. They also aver that the district court's imposition of the statutory maximum for each infringement was grossly excessive and was an abuse of discretion because the damages were not proven and the court improperly relied on Román's determination of damages. We reject the appellants' claims and affirm the district court's imposition of the maximum damages allowed under 17 U.S.C. § 504(c)(1).

First, we reject the contention that the Curet Heirs failed to properly exercise their option to receive statutory damages. In these circumstances, where the Curet Heirs requested

either actual damages or statutory damages, appellants cannot complain that they had no notice that the court might grant statutory damages. In fact, Federal Rule of Civil Procedure 8 explicitly allows a plaintiff to demand relief in the alternative. Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief sought[] . . . may include relief in the alternative or different types of relief."); see also 6 William F. Patry, Patry on Copyright § 22:171 (2011) (noting that a plaintiff may submit both actual damages and statutory damages to the trier of fact as alternatives and wait until the verdict is rendered to select which one it prefers). Further, the statute clearly states that "the copyright owner may elect, at any time before final judgment is rendered, to recover[] . . . an award of statutory damages for all infringements involved in the action . . . ." 17 U.S.C. § 504(c)(1). In any event, the Curet Heirs clearly elected statutory damages before judgment was entered in their proposed findings of fact and conclusions of law. We therefore dismiss appellants' contention that the Curet Heirs failed to properly elect statutory damages.

We now turn to our review of the district court's imposition of the maximum statutory damages under 17 U.S.C. § 504(c). Our review of a trier of fact's decision as to the amount of a statutory damages award is "extremely narrow." Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 3 (1st Cir. 1983). "The employment of the statutory yardstick, within set

limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion." Id. (quoting Douglas v. Cunningham, 294 U.S. 207, 210 (1935)) (internal quotation marks omitted); see also Markham v. A.E. Borden Co., 221 F.2d 586, 587 (1st Cir. 1955) ("The Supreme Court has held that within the minimum and maximum limits set by Congress '* * * the court's discretion and sense of justice are controlling * * *' in its award of statutory damages." (citations omitted)). Other circuit courts agree that an appellate court's review of a district court's award of statutory damages is extremely limited. See, e.g., Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113 (2d Cir. 2001) (noting that a deferential standard of review is applied to a fact finder's calculations of statutory damages); Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 496 (4th Cir. 1996) (noting that the appellate court reviews the award of statutory damages for a willful infringement under a standard more deferential than abuse of discretion); Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 992 (9th Cir. 2009) (noting that a jury has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" (quoting Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990)) (internal quotation mark omitted)).

Although the court's discretion in awarding statutory damages is broad, it is not unlimited. There must be some basis, such as a hearing or sufficient affidavits, for the court's judgment. See Morley Music Co., 725 F.2d at 3. ACEMLA and LAMCO complain that the district court based its award of the maximum statutory damages on the opinion of the Curet Heirs' expert. However, a review of the district court's reasoning suggests otherwise. See Curet-Velázquez, No. 06-1014 (ADC), slip op. at 19-23. The district court acknowledged that, in determining what amount of statutory damages to impose, it may consider factors such as "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct," and the state of mind of the infringers.[6] Id. at 20 (quoting N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992)).

However, the district court could not take the above referenced factors into consideration because ACEMLA and LAMCO did not cooperate. They did not provide comprehensive and accurate reports to the district court. Id. at 22. The district court properly took this fact into account, stating,

> [I]t is impossible for the court to determine the expenses saved or the profits reaped by

[6] The court also noted that it may consider whether the defendants had cooperated in providing the court with records from which to assess the damages to the copyright owner. See Curet-Velázquez, No. 06-1014 (ADC), slip op. at 20.

-24-

> the defendants, nor can it be established with certainty the amount of revenues lost as a result of the defendants' conduct. However, what the court can assess is [appellants'] inability to provide clear records for each company, its intermingling of the reports, and its failure to fulfill its contractual obligations of rendering royalty reports to plaintiffs. This is exacerbated by the fact that the underlying data that supports the reports furnished to the plaintiffs does not coincide and is unreliable, making it impossible to re-create or track the information, data and revenues supplied in the defendants' reports.

Id. Given our limited review of the amount of a district court's statutory damages award and the validity of the reason given by the district court in support of its award, we affirm the district court's imposition of the maximum statutory damages pursuant to 17 U.S.C. § 504(c).

### III. **Conclusion**

For the reasons stated above, we affirm the district court's orders.

**Affirmed**.