RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ROBERT L. SMITH, JR., aka BIGG ROBB, dba Jenner Music Group, Over 25 Sounds, and Bigg Robb Music,
            *Plaintiff-Appellee*,

            *v.*

BERNARD THOMAS, aka BISHOP BULLWINKLE, dba Bes Wes or Best West Music Publishing,
            *Defendant-Appellant*.

No. 18-3380

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:16-cv-00168—Thomas M. Rose, District Judge.

Decided and Filed: December 20, 2018

Before: SUTTON, DONALD, and THAPAR, Circuit Judges.

_____

## COUNSEL

**BRIEF:** Aaron G. Durden, DURDEN LAW, LPA, LLC, Dayton, Ohio, for Appellant. Andrew Grimm, DIGITAL JUSTICE FOUNDATION, Omaha, Nebraska, for Amicus. Robert L. Smith, Jr., Dayton, Ohio, pro se.

_____

## OPINION

_____

THAPAR, Circuit Judge. When Robert Smith (aka Bigg Robb) recorded his song *Looking for a Country Girl*, he probably was not looking for a legal battle, too. But Bernard Thomas (aka Bishop Bullwinkle) copied the beat from Smith's song to make a new one—called *Hell 2 Da Naw Naw*—and suddenly became famous. Understandably upset at his work being

copied, Smith informed Thomas of the issue and attempted to negotiate a resolution. When that failed, he sued and won. On appeal, Thomas seeks to vacate Smith's damages award based on an overly-proceduralized interpretation of the Copyright Act. We reject Thomas's interpretation and affirm Smith's award.

I.

Robert Smith, known professionally as Bigg Robb, is a recording artist and producer from Ohio who specializes in Southern Soul music. In 2012, Smith wrote and recorded a catchy song called *Looking for a Country Girl*. Bigg Robb, *Looking for a Country Girl, on* Juke Joint Music (Over 25 Sound 2012), *available at* https://www.youtube.com/watch?v=v2n9rhb3ZSs. He registered his copyright in the song around the time it was released.

Enter Bernard Thomas, known professionally as Bishop Bullwinkle, another Southern Soul musician. Thomas used the first twelve seconds of *Looking for a Country Girl* as the beat for a new song, *Hell 2 Da Naw Naw*.[1] Thomas did not ask Smith's permission to sample his music, nor did he give Smith any credit for creating the beat.

As fate would have it, Smith soon discovered the sampling. Smith and Thomas were scheduled to perform at the same venue. As Smith was in his dressing room getting ready, he thought he "heard one of [his] songs playing" on the loudspeakers. R. 35, Pg. ID 226. Wondering why his song was being played on stage without him, Smith rushed out to see what was going on. But it was not *Looking for a Country Girl* playing over the speakers; rather, it was Thomas performing *Hell 2 Da Naw Naw*. Smith confronted Thomas after his performance, and Thomas admitted to sampling. The two exchanged numbers and agreed to work out some sort of compromise.

As negotiations continued, *Hell 2 Da Naw Naw* went viral. People began posting videos of themselves or others dancing to the song. *See, e.g.*, *East Texas Dancing Granny Takes Social Media by Storm*, KSLA News 12 (Sept. 1, 2015, 10:10 PM), http://www.ksla.com/story/29937234/east-texas-dancing-granny-takes-social-media-by-storm.

---

[1]This appears to be the song's original title, though the district court referred to it as *Hell 2 the Naw Naw*. The song has also been called *Hell to the Naw Naw*, *Hell 2 Da Naw,* and *Hell Naw to the Naw Naw*.

Others used it as a catchphrase to describe their response to "any and every daily struggle. . . . Will you have that report in by Friday?  *Hell to da naw naw*[.]  The gas prices went up again? *Hell naw, to the naw naw naw*."  Candice Crutchfield, *Bishop Bullwinkle Gives Us the Perfect Response to Any Bad Situation*, Blavity (2016), https://blavity.com/bishop-bullwinkle-gives-us-the-perfect-response-to-any-bad-situation/.  Thomas uploaded a music video, which soon got millions of views, and articles were written about his "meteoric rise" to fame.  Justin Kline, *P.C. Man Enjoys Fame from Viral Music Video*, Plant City Observer (Oct. 2, 2015), https://www.plantcityobserver.com/article/pc-man-enjoys-fame-viral-music-video.  The song has maintained its popularity over the last couple of years.  Thomas posted a new version to YouTube in 2016 that currently has over thirty-one million views.[2]  Bishop Bullwinkle, *Hell 2 Da Naw, Naw, Naw With Da Bicycle* (Bes Wes Music 2016), *available at* https://www.youtube.com/watch?v=8QxIIz1yEsA.  More recently, *Hell 2 Da Naw Naw* was played on *The Tonight Show Starring Jimmy Fallon*, with the Roots joining in.  *See The Tonight Show Starring Jimmy Fallon* (NBC television broadcast Feb. 14, 2017), *available at* https://archive.org/details/KNTV_20170215_073400_The_Tonight_Show_Starring_Jimmy_Fall on/start/780/end/840.

As Thomas's fame grew throughout 2015, he "kept talking in circles" with Smith, refusing to agree to any form of compensation or joint ownership for *Hell 2 Da Naw Naw*. R. 35, Pg. ID 248.  At one point the parties verbally agreed to a 50/50 split, but then Thomas refused to sign the contract when it was mailed to him.  Towards the end of the year, Thomas changed his tune.  Whereas before Thomas had appeared conciliatory, now he no longer even acknowledged Smith's contribution.  Instead, he publicly accused Smith of being a liar and said, "Let's go to court. . . . If I did something wrong, why ain't I in copyright court? . . . [T]ake me to court."  R. 25-20, Pg. ID 178.

---

[2]This version attempts to avoid Smith's copyright by reproducing his melody while not directly copying the sound recording itself.  Smith says it is a "derivative version" of the original.  R. 35, Pg. ID 255; *see also* Daddy B. Nice, *Bishop Bullwinkle: Bishop Bullwinkle on Spotify!*, Daddy B. Nice's Southern Soul RnB.com (Jan. 16, 2018), http://www.southernsoulrnb.com/artistguide.cfm?aid=621 (noting that the new version "isn't quite as good as the original . . . with Bigg Robb's instrumental track").

Smith honored Thomas's request and sued him for copyright infringement. Both parties represented themselves. Thomas, however, essentially did not participate in the case, apart from filing a two-page answer to Smith's complaint and two short conclusory letters. He ignored discovery requests and did not show up to trial. But Smith did, and he gave a thorough presentation with seventeen supporting exhibits. He also played both songs for the judge. When asked what his damages were, Smith explained that he had only a "guesstimation" based on *Hell 2 Da Naw Naw*'s YouTube views and Thomas's public performances of the song. R. 35, Pg. ID 263–64. He also explained that he "took a look at the law, it said that damages up to $150,000 could be awarded by the Court[,]" and he was "certainly asking for that amount." R. 35, Pg. ID 262; *see* 17 U.S.C. § 504(c)(2).

The court ruled in Smith's favor, awarding him 50% ownership rights in *Hell 2 Da Naw Naw* (and any derivatives thereof) and enjoining Thomas from further infringement. The court also found that Smith had not presented sufficient evidence to show actual damages but that he had "elected" statutory damages instead. *See* 17 U.S.C. § 504(c). Accordingly, the court awarded Smith $30,000 in statutory damages—substantially less than he had asked for.

On appeal, Thomas does not dispute that he infringed Smith's copyright, nor does he challenge the district court's award of ownership rights and injunctive relief. Instead, Thomas argues that Smith did not properly "elect" statutory damages in the district court. *See id.* § 504(c)(1). We review Thomas's question of statutory interpretation de novo. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 672 F.3d 434, 437 (6th Cir. 2012).

II.

Copyright infringers are liable "for either . . . (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." 17 U.S.C. § 504(a). Actual damages must be proven by a preponderance of the evidence, like any other element of a claim. Statutory damages do not require specific proof. They are set at the district court's discretion, confined within a specific range provided for in the statute. *Id.* § 504(c). Because actual damages are often difficult to prove in copyright infringement cases, statutory damages ensure that infringers are adequately deterred and copyright owners are adequately compensated.

*See Douglas v. Cunningham*, 294 U.S. 207, 209 (1935). Statutory damages have long been a part of copyright law, going back to common-law England. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348–52 (1998).

The Copyright Act gives plaintiffs a choice between actual and statutory damages: "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). Thomas's appeal hangs on the word "elect." He argues that Smith did not formally elect statutory damages before final judgment, so the court erred by awarding them.

As always, we begin with the text of the statute. And nothing there suggests any formality or particularity requirement for making a statutory damages election. The word "elect" does not by itself require formal procedures. "Elect" means the same thing today as it meant when the statute was enacted—simply "to choose" or to "pick out." *American Heritage Dictionary of the English Language* (1st ed. 1976). The rest of the provision does not support Thomas's reading either. The statute requires only that the copyright owner elect "at any time before final judgment is rendered." 17 U.S.C. § 504(c)(1). The text's silence about other formal procedures speaks volumes. It does not contain a "magic words incantation" requirement to elect statutory damages, so we are not at liberty to invent one. Amicus Br. at 5; *cf. Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))). Section 504(c) simply gives plaintiffs a choice between two remedies—actual damages or statutory damages. It is a permissive provision, not a procedural hurdle designed to prevent plaintiffs from getting any remedy at all. *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 502–03 (1st Cir. 2011).

So how does a plaintiff elect statutory damages? He simply has to inform the court—either orally or in writing—of his intent to seek them at any point before final judgment. *See* 6 William F. Patry, *Patry on Copyright* § 22:171 (2018). And the election does not have to exclude the possibility of actual damages—plaintiffs are entitled to simultaneously seek actual

damages and statutory damages in the alternative.  *See Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 57–58 (1st Cir. 2011).

Smith easily meets this standard.  Early in the case, he filed a Rule 26(f) plan and status report stating that, due to "the willful nature of Defendant['s] infringement, Plaintiff would be entitled to the statutory maximum of $150,000" and that "Plaintiff is entitled to statutory damages for each instance of contributory infringement or inducement of infringement."  R. 11, Pg. ID 51; *see* Fed. R. Civ. P. 26(f); *see also* 17 U.S.C. § 504(c)(2) (stating that, where "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000").  At trial, he reiterated his request:  "I took a look at the law, it said that damages up to $150,000 could be awarded by the Court.  So we are certainly asking for that amount financially."  R. 35, Pg. ID 262.  He also testified about the willful nature of the infringement, which is only relevant to statutory damages.  Smith's invocations of the Act's willfulness enhancement and $150,000 maximum, combined with an explicit mention of "statutory damages," indicated his election—he did not need to cite the provision itself.  He also implicitly disclaimed actual damages by explaining that he had not gathered evidence to substantiate them, and instead he could "only give a guesstimation" based on YouTube views.  *Id.* at 263–64.  The district court understood Smith perfectly well, specifically concluding that he had elected statutory damages.  Smith's intent was no mystery.

Thomas's main argument is that Smith also presented evidence of actual damages, thus implicitly disclaiming statutory damages.  For instance, Smith testified that Thomas probably earns $5,000 to $7,500 per performance and that he is selling the song on iTunes.  But courts consider economic evidence like this in determining statutory damages awards.  *See N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("In determining an award of statutory damages . . . a court may consider 'the expenses saved and profits reaped by the defendants in connection with the infringements [and] the revenues lost by the plaintiffs as a result of the defendant's conduct . . . .'" (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[B], at 14–41 (1991))); *accord Digital Filing Sys., LLC v. Aditya Int'l*, 323 F. App'x 407, 419–20 (6th Cir. 2009).  Thus, Smith's statements supported his claim for statutory damages.  And to the extent his statements indicated intent to seek actual damages,

that would just mean he pled in the alternative.  "[A] plaintiff may submit both actual damages and statutory damages to the trier of fact as alternatives and wait until the verdict is rendered to select which one it prefers." *Curet-Velazquez*, 656 F.3d at 57–58 (citing Patry, *supra*, § 22:171); *see also* Fed. R. Civ. P. 8(a)(3); *Cotter v. Christus Gardens, Inc.*, 238 F.3d 420, at *2 (6th Cir. 2000) (table).

* * *

Smith made multiple statements to the court, both in writing and in person, that clearly indicated his intent to seek statutory damages.  These actions were more than sufficient to "elect" statutory damages under the Copyright Act.  We affirm.