RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TINA MCPHERSON,

        *Plaintiff-Appellant/Cross-Appellee*,

   *v.*

SUBURBAN ANN ARBOR, LLC,

        *Defendant-Appellee/Cross-Appellant*.

> Nos. 24-1720/1848

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-13152—David M. Lawson, District Judge.

Decided and Filed:  April 21, 2025

Before:  SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Ian B. Lyngklip, LYNGKLIP & ASSOCIATES CONSUMER LAW, Oak Park, Michigan, Duran L. Keller, KELLER LAW, Lafayette, Indiana, for Appellant/Cross-Appellee. Josephine A. DeLorenzo, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee/Cross-Appellant.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge.  Tina McPherson sued Suburban Ann Arbor, a Michigan car dealer, for repossessing her car and taking more than $2,000.  A federal jury found Suburban liable for violating federal and state consumer protection laws.  The district court awarded McPherson most, but not all, of her attorney's fees and declined to treble her damages under two Michigan statutes.  McPherson appeals both decisions, and Suburban cross-appeals the district court's fee award.  Seeing no abuse of discretion or any other error, we affirm.

I.

McPherson's run-of-the-mill decision to buy a car in July 2020 turned into a five-year saga in federal court.

The car-buying process began as usual.  McPherson visited Suburban Ann Arbor, a local car dealership.  She told Suburban what type of car she wanted, filled out a credit application, and left.  Suburban called her later to tell her about a car on the lot, a used Dodge Durango that would suit her family and fit her budget.

When McPherson returned to the dealership to finalize her purchase, things began to fall apart.  Suburban told her that she had been approved for financing, which it knew was a lie.  Suburban, in truth, never applied for any financing that would allow her to purchase the car.  It nonetheless told her that the "approved" financing plan required her to pay $2,000 down—double what she had expected—and a series of fees.  McPherson reluctantly agreed.  She received the title to the car, paid the $2,000 downpayment and fees, and drove the car off the lot.

Weeks passed, and McPherson still had not received instructions about how to make her car payments.  When she called Suburban, the dealer told her that the financing fell through.  Suburban gave her two options:  sign a new financing contract with new (and worse) terms for her, or return the car.

McPherson declined to enter the new contract.  Suburban repossessed the car, from her driveway and in front of her family no less, and pocketed McPherson's down payment and fees.

McPherson sued Suburban in federal court.  She alleged that Suburban's tactic of lying about financing, trying to extort better terms, and repossessing her car—known informally as "yo-yo financing" or "spot delivery"—amounted to statutory conversion under Michigan law and violated the Michigan Regulation of Collection Practices Act, as well as a bevy of other state and federal consumer protection laws.  After a four-day trial, a jury ruled in McPherson's favor on all of her state claims and all but one of her federal claims.  The jury awarded McPherson $15,000 in actual damages, $23,000 in damages for the value of the converted property, and $350,000 in punitive damages.

McPherson moved for prejudgment interest, treble damages on two of her state claims, attorney's fees in the amount of $555,039.50, and costs in the amount of $20,684.61. The district court denied her motion for treble damages but awarded her $418,995 in attorney's fees, $11,212.61 in costs and expenses, and $6,433.65 in prejudgment interest. The full judgment came to $824,641.26.

McPherson appeals, arguing that the district court should have awarded her treble damages and additional attorney's fees. Suburban cross-appeals, challenging the district court's fee award as excessive.

## II.

### A.

We start with McPherson's first challenge: that she should receive treble damages on top of the $388,000 in damages that the jury awarded.

McPherson prevailed under two Michigan statutes that gave the district court authority to award treble damages. Under the first, the Michigan Regulation of Collection Practices Act, "the court may assess a civil fine of not less than 3 times the actual damages," in addition to actual damages, if it finds that the defendant "wilful[ly] violat[ed]" the Act. Mich. Comp. Laws § 445.257(2). Under the second, Michigan's conversion statute, the plaintiff "may recover 3 times the amount of actual damages sustained" if the defendant "convert[ed]" the plaintiff's "property to [its] own use." *Id.* § 600.2919a(1).

While both statutes permit trial courts to award treble damages under certain circumstances, neither statute requires it. The permissive language in both statutes—"*may* assess," "*may* recover"—instead allows the court to choose whether to grant treble damages even when the claimant meets the statutes' other conditions. *See Manuel v. Gill*, 753 N.W.2d 48, 55 (Mich. 2008); *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 844 N.W.2d 727, 732 (Mich. Ct. App. 2013) (per curiam).

Because the trial court has no obligation to treble damages under either statute, we review its refusal to do so for abuse of discretion. *See Cultrona v. Nationwide Life Ins.*, 748 F.3d 698,

706 (6th Cir. 2014); *accord Jackson v. Bulk AG Innovations, LLC*, 993 N.W.2d 11, 16 (Mich. Ct. App. 2022).  No such abuse occurred.

The district court, first of all, properly found that McPherson is eligible for treble damages.  The jury found that Suburban willfully violated the collection statute, *see* Mich. Comp. Laws § 445.257(2), and converted McPherson's car to its own use, *see id.* § 600.2919a(1)(a).  That meant the court could—but it also meant the court could not—treble McPherson's damages under the two statutes.  *See Aroma Wines*, 844 N.W.2d at 732.

The court acted within its discretion in finding that treble damages were "not necessary to achieve a just result."  R.173 at 6.  The $91,000 in damages that McPherson stood to gain— $45,000 from the collection statute and $46,000 from the conversion statute—would serve only one role under Michigan law:  to "punish[]" Suburban and "set[] an example for similar wrongdoers." *Alken-Ziegler, Inc. v. Hague*, 767 N.W.2d 668, 671 (Mich. Ct. App. 2009) (per curiam); *see also Peisner v. Detroit Free Press, Inc.*, 364 N.W.2d 600, 602 n.4 (Mich. 1984). McPherson's $350,000 punitive damages award, the court found, already "vindicated" those interests.  R.173 at 6.  That conclusion arose from the court's front-seat perspective on "Suburban's practice of reneging on deals" to spin a profit, and its first-hand insight about what award would sufficiently punish and deter Suburban (and other dealers like it) from doing the same again.  R.157 (Jury Trial Tr.) at 24; *see Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 997 (6th Cir. 2024); *Weiss v. Hodge*, 567 N.W.2d 468, 476 (Mich. Ct. App. 1997).

Sensible, too, was the court's decision to pause before increasing McPherson's punitive damages given the due process limits on them.  *See State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 425 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).  "[I]n practice," the Supreme Court has explained, "few [punitive damages] awards exceeding a single-digit ratio between punitive and [actual] damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425.  The district court compared McPherson's punitive damages against her actual ones.  Without treble damages, McPherson's $350,000 in punitive damages and $38,000 in actual damages generated a 9.2–to–1 ratio, already close to double-digits.  With treble damages, the ratio would rise to 11.6–to–1.  The marginal value of these

treble damages, the court concluded, did not justify raising any constitutional concerns. *Cf. Gore*, 517 U.S. at 574–75. On these facts and in this constitutional context, the court's decision to deny treble damages amounted to a reasoned use, not an abuse, of its discretion.

B.

McPherson resists this conclusion on three fronts: (1) that the district court should have assessed treble damages under the due process standard for statutory damages, not the one for punitive damages; (2) that the court lacked authority to consider whether the $350,000 punitive damages award made treble damages unnecessary under the collection statute and the conversion statute; and (3) that the court should have treated treble damages as mandatory, not discretionary, under both statutes.

*Should the district court have considered these treble damages under the due process standard for statutory damages?* Here is McPherson's theory. Because the relevant statutes provide for treble damages, she says, they amount to statutory damages. That means, she adds, that the more permissive due process standard for statutory damages should apply. *See St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919) (asking whether statutory damages are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable").

But McPherson overreads the meaning of statutory damages. The phrase has a narrower sense. It refers only to damages fixed by statute, either in a set amount or range, when actual damages are difficult to calculate or too small to meaningfully deter. *See Douglas v. Cunningham*, 294 U.S. 207, 209 (1935); *Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018).

Consider a few examples. The Arkansas statute in *Williams* allowed passengers overcharged by railroad companies to recover "not less than fifty dollars nor more than three hundred dollars" from the railroad, no matter whether they lost less money. 251 U.S. at 63–64 (quotation omitted). Under the Copyright Act, as another example, copyright owners may choose to recover "statutory damages" between $750 and $30,000 per infringement, and up to $150,000 per willful infringement, instead of "actual damages." 17 U.S.C. § 504(a), (c)(1); *Zomba Enters., Inc. v. Panorama Recs., Inc.*, 491 F.3d 574, 578, 587–88 (6th Cir. 2007).

Today's treble damages do not fit that mold.  Michigan's chosen formula—trebling the damages suffered when a defendant violates the collection statute or the conversion statute— assumes that the court can calculate actual damages and requires it to do so.  A measure of damages that depends on actual damages does not amount to an "alternative" to it.  *Smith*, 911 F.3d at 382.

Confirming the point, the collection statute provides statutory damages as an alternative to single or treble actual damages.  The statute allows the court to award $50 or $150 if single or treble damages, respectively, would produce a lower award.  *See* Mich. Comp. Laws § 445.257(2). The due process standard for punitive damages supplied the proper constitutional yardstick for these treble damages.

*Did the collection statute and conversion statute prohibit the district court from considering whether the $350,000 in punitive damages adequately punished Suburban?* McPherson contends for several reasons that the court erred by considering whether her $350,000 punitive damages made treble damages unnecessary.  Reason one:  The statutes do not list other damage awards as a factor to consider.  Two:  Michigan courts often ask only whether the defendant acted willfully before awarding punitive damages.  Three:  The conversion statute says that treble damages are "in addition to any other right or remedy."  *Id.* § 600.2919a(2).

None of McPherson's arguments sticks.  Start with the first.  Neither the cited cases, the collection statute, nor the conversion statute prevents courts from considering factors not mentioned in these statutes, whether other damages awards or something else.  *See, e.g.*, *Hunt v. Hadden*, 127 F. Supp. 3d 780, 784 (E.D. Mich. 2015); *Kelly v. Fine*, 92 N.W.2d 511, 512–13 (Mich. 1958); *Gates v. Comstock*, 71 N.W. 515, 516–17 (Mich. 1897); *Lane v. Ruhl*, 61 N.W. 347, 347 (Mich. 1894); *Alken-Ziegler*, 767 N.W.2d at 671.  The district court's discretion under these statutes instead gives the court flexibility to draw on its wisdom and experience, including to decide whether other damages already suffice to punish and deter the defendant's misconduct. *Cf., e.g.*, *Jackson*, 993 N.W.2d at 16.  As for the second point, none of these cases prevents the court from considering factors other than the defendant's willfulness when deciding whether to grant treble damages.  As for the third point, the conversion statute at most confirms that a court

may award treble damages in addition to other remedies, not that it must. *See* Mich. Comp. Laws § 600.2919a(2).

*Are treble damages mandatory under the collection statute or the conversion statute?* McPherson forfeited this argument by failing to raise it in her opening brief. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). "Time, time, and time again," we have reminded appellants that we will treat an argument not raised in the opening brief "as forfeited." *Id.* (quotation omitted). McPherson did not heed that warning. She said nothing in her opening brief about the mandatory nature of treble damages in either law. To the contrary, she insisted, as she did before the district court, that treble damages are "discretionary" under the conversion statute. First Br. 13–14. Only in her reply brief did McPherson argue that the court must, not may, award treble damages under both laws. "That was one brief too late." *Island Creek Coal*, 910 F.3d at 256. Having failed to argue that treble damages were mandatory in her opening brief, and indeed having taken the opposite side, she has forfeited the issue.

III.

While no statute required the district court to treble McPherson's damages, several statutes required the court to award McPherson "reasonable attorney's fees." *See* 15 U.S.C. § 1681n(a)(3) (Fair Credit Reporting Act); 15 U.S.C. § 1691e(d) (Equal Credit Opportunity Act); Mich. Comp. Laws § 445.257(2). The court awarded McPherson $418,995, less than the $555,039.50 she requested. McPherson and Suburban both challenge that award on appeal, one as too low, one as too high.

We review the district court's decision for an abuse of discretion, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and presume that the "lodestar amount"—the number of hours worked times a reasonable hourly fee—amounts to a reasonable fee, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).

The district court's fee award bears the hallmarks of a reasonable and well-reasoned decision. The court considered the market rate for attorneys in Michigan, hourly rates awarded to McPherson's attorneys in other cases, and the hours necessary to litigate the case in light of the "extensive" record and the skill of McPherson's attorneys. R.199 at 9; *cf. EEOC v.*

*Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018).  It multiplied the rates by those hours to award the reasonable lodestar amount of $418,995.

McPherson claims that the district court should have applied higher hourly rates for her attorneys.  But whether this or that rate is appropriate is "essentially a[] factual matter[]" that implicates the district court's "superior understanding of the litigation," the attorneys, and the market.  *Hensley*, 461 U.S. at 437.  Neither of McPherson's particularized complaints—that the court overlooked her lawyers' skill and misjudged the market—throws a red flag on the court's ring-side judgment and requires us to do so based on a cold record.  *United States v. Poynter*, 495 F.3d 349, 351–52 (6th Cir. 2007).  The court had "wide discretion" to assess her lawyers' skill and the market rates, and it ably did so here.  *Fox v. Vice*, 563 U.S. 826, 839 (2011).  It found that McPherson's requested $600 per hour rate for her two lead attorneys exceeded the 95th percentile rate for attorneys with similar experience.  After accounting for fees awarded to her attorneys little more than a year ago, it adopted a rate of $450 per hour at the 75th percentile. The court again considered the going rate for the associate attorney who worked on her case. The court's analysis on this score offers no cause for concern.

Suburban, for its part, alleges that the fee award overcompensates McPherson's attorneys for clerical work performed by a paralegal.  "[P]urely clerical or secretarial tasks," it is true, "should not be billed at a paralegal rate." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989).  But whether a task is purely clerical is usually best left to the district court, whose unobstructed view of the litigation gives it a better sense of the work completed and the rate it commands. *See Echols v. Express Auto, Inc.*, 857 F. App'x 224, 229 (6th Cir. 2021).  Far be it from us to quickly second-guess these decisions after spending only months with the parties' cold briefs, compared to the district court's years with their real-time dispute. *See Fox*, 563 U.S. at 838.

Even if some purely clerical tasks appear on McPherson's ledger, the fee award adequately accounted for them.  McPherson's attorneys calculated their total fees at nearly $598,000 and then voluntarily removed 7.5% off the top to account for any excess billing, including for clerical time.  The attorneys later dropped their requested fee by $8,000 more when Suburban disputed McPherson's bill.  And the court subtracted an additional $128,000 after

adjusting the attorneys' rates and hours worked. These reductions, totaling almost $180,000, produced an award that reflected the court's "overall sense" of the attorneys' compensable effort. *Id.* Such "rough justice" in such an eminently rough-justice setting suffices. *Id.*; *see also Hensley*, 461 U.S. at 436. The district court need not comb line-by-line through McPherson's nearly 700-page bill to "achieve auditing perfection," and we need not "micromanage[]" the district court by demanding it. *Fox*, 563 U.S. at 838.

We affirm.